IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TROY LAMONT LOVE, II,

    Petitioner,

v.                                                 Case No. 20-3067-JWB

DON LANGFORD, WARDEN,

    Respondent.

**MEMORANDUM AND ORDER**

This matter is before the court on Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) The matter, as briefed, is ripe for decision. (Docs. 1, 6.) The court has reviewed those portions of the state court record which are pertinent to the issues raised in the application and finds that an evidentiary hearing is not warranted. Petitioner's application is DENIED for the reasons set forth herein.

**I.    Background**

Petitioner was convicted of felony murder and child abuse following a jury trial in state court. Petitioner was sentenced to life imprisonment for felony murder and to a consecutive sentence of 55 months for child abuse. In federal habeas proceedings, the state court's factual findings are presumed correct and petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, Petitioner does not challenge the state court's findings. Accordingly, the court incorporates the Kansas Court of Appeal's version of the facts:

> In the underlying criminal case, the State charged Love with the murder of B.C.J., the 18-month-old daughter of his live-in girlfriend Robin Harrington.

1

We offer an abbreviated version of the trial evidence bearing on the comparatively narrow issues Love has raised in this appeal.

The State presented medical evidence during the jury trial that B.C.J. sustained a powerful blow or strike that severed her spine at the base of her neck, rendering her brain dead almost instantaneously. The incident occurred in early April 2012 at the residence Love shared with Harrington and her children. During the trial, just over two years later, Love testified Harrington appeared to be dozing on the couch in the living room as he went to check on the children who were supposed to be taking afternoon naps in one of the bedrooms. B.C.J., however, was jumping on a bed. She asked for a drink of water. Love told the jury he went to the kitchen, ate several granola bars, and then got her a glass of water. Love said that when he returned to the bedroom three to five minutes later, B.C.J. was lying unresponsive on the floor.

Love immediately awoke Harrington. At trial, he suggested she wasn't really sleeping. Love then went to a neighbor's home to get help but left as an ambulance crew and law enforcement officers arrived. Again at trial, Love explained he took off because he had an outstanding arrest warrant for a minor offense. B.C.J. was first taken to a hospital in Salina and then transferred to a larger hospital in Wichita where she was officially declared brain dead the next day.

The forensic pathologist who autopsied B.C.J. and testified as a witness for the State told the jury the fatal injury would have required substantial force directly to B.C.J.'s neck or head that could have been applied in a violent shaking of the child. The effect on B.C.J. would have been immediate and catastrophic. The pathologist also testified that he found evidence of older injuries to B.C.J., including broken bones and healing bruises, consistent with ongoing physical abuse. He said the bruising was several days old and that B.C.J. had two ribs that were broken 7 to 10 days earlier and injuries to her vertebrae that were at least 2 to 3 weeks old.

Love called another pathologist as an expert witness who testified that the fatal injury to B.C.J. resulted from the application of "great force" severing the child's spine—what he characterized as a "grab and slam" injury. The pathologist agreed the injury could have been caused by someone violently shaking B.C.J.

Neither expert suggested B.C.J. could have injured herself in an accidental fall from the bed.

Harrington testified at trial that she noticed B.C.J. had bruising inside her left ear and bloodshot eyes about a week to 10 days before the child died. A few days later, Harrington noticed B.C.J. couldn't turn her neck and seemed to be losing hair. She took B.C.J. to a local emergency room. The doctor diagnosed

> B.C.J. has having an ear infection and swollen glands. The doctor testified at trial as to the treatment he provided B.C.J. and told the jury he did not see what he considered signs of physical abuse.
>
> As we indicated, the jury convicted Love of felony murder and child abuse. The district court later imposed a mandatory sentence of life on Love on the murder conviction and a consecutive term of 55 months in prison on the child abuse conviction. Love filed a direct appeal, and the Kansas Supreme Court affirmed the convictions and sentences. *State v. Love*, 305 Kan. 716, 387 P.3d 820 (2017).

*Love v. State*, 438 P.3d 311 (Table), 2019 WL 1575362, at *1-2 (Kan. Ct. App. 2019).

On October 26, 2017, the state district court denied Petitioner post-conviction relief under K.S.A. 60-1507. The Kansas Court of Appeals affirmed the district court's denial of Petitioner's 60-1507 motion. On December 18, 2019, The Kansas Supreme Court denied review. On March 3, 2020, Petitioner filed this application for relief under 28 U.S.C. § 2254. (Doc. 1.)

## II.     Standards

This court's ability to consider collateral attacks on state criminal proceedings is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the highly deferential standard contained in AEDPA, if Petitioner's claim has been decided on the merits in state court, this court may only grant relief under two circumstances: 1) if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or 2) if the state court decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). Since Petitioner does not challenge the state court's factual findings, the second basis for relief does not apply in this case. As for the first basis for potential habeas relief, the Tenth Circuit has repeatedly held:

3

> A state court decision is "contrary to" Supreme Court precedent in two circumstances: (1) when "the state court applies a rule that contradicts the governing law set forth in [the Court's] cases"; or (2) when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from" that reached by the Court. *Williams v. Taylor*, 529 U.S. 362, 406, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision constitutes an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S. Ct. 1495. Thus, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S. Ct. 1495; *see also Thomas v. Gibson*, 218 F.3d 1213, 1219-20 (10th Cir. 2000) (discussing *Williams*).

*Hamilton v. Mullin*, 436 F.3d 1181, 1186 (10th Cir. 2006).

The AEDPA standard "'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court' and requires the petitioner to show 'that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement.'" *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 738–39 (10th Cir. 2016) (quoting *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013) (internal quotation marks omitted); *see also Frost v. Pryor*, 749 F.3d 1212, 1225 (10th Cir. 2014) ("Under the [fairminded jurists] test, if all fairminded jurists would agree the state court decision was incorrect, then it was unreasonable and the habeas corpus writ should be granted. If, however, some fairminded jurists could possibly agree with the state court decision, then it was not unreasonable and the writ should be denied.") (brackets in original). Under this standard, the state court decision must "be given the benefit of the doubt." *Id.* at 739 (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). However, "[i]f a claim was not resolved by the state courts on the merits and is not otherwise procedurally barred, . . . § 2254(d) . . . do[es] not apply . . ., [and] we

review the [federal] district court's legal conclusions de novo and its factual findings, if any, for clear error." *Cole v. Trammel*, 755 F.3d 1142, 1148 (10th Cir. 2014).

This court will only consider alleged violations of federal law in reviewing Petitioner's application. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Moreover, the federal questions must ordinarily have been first presented to the state courts to be considered by this court. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *but see* 28 U.S.C. § 2254(b)(2) (permitting denial on the merits, despite failure to exhaust state remedies).

### III.  Analysis

Petitioner's application states four grounds for relief: 1) prosecutorial misconduct by leading witnesses to improperly vouch for credibility of Harrington; 2) ineffective assistance of counsel for failing to assert the relevancy of Harrington's civil lawsuit; 3) ineffective assistance of counsel for failing to object to questions leading state witnesses to vouch for Harrington's credibility; and 4) the state district court failed to hold an evidentiary hearing on his K.S.A. 60-1507 claims.[1] Because Petitioner is proceeding pro se, the court is to liberally construe his filings. *United States v. Pinson*, 585 F.3d 972, 975 (10th Cir. 2009). However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Petitioner's behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

### A.  Petitioner Was Given a Fair Trial

Petitioner alleges the prosecutor violated his right to a fair trial by asking witnesses whether Harrington was acting appropriately and being cooperative following B.C.J.'s injury. (Doc. 1 at 8.) Petitioner argues the questions and responses are inadmissible under the well-settled rule that

---

[1] Petitioner does not expand on the basis for any of his claimed grounds for relief. Accordingly, the court reviewed Petitioner's appellate briefs to determine his arguments in state proceedings on these issues. *See Grant v. Royal*, 886 F.3d 874, 891 (10th Cir. 2018) (finding an argument not presented to the state court would be waived on federal habeas review).

5

one witness may not offer an opinion concerning the credibility of another witness. *See State v. Crum*, 286 Kan. 145, 184 P.3d 222, 229 (2008) (noting "[q]uestions which compel a defendant or witness to comment on the credibility of another witness are improper because weighing the credibility of witnesses is the province of the jury") (internal quotation marks omitted). The government argues the Kansas Court of Appeals reasonably rejected this issue under Petitioner's ineffective assistance of counsel claim. (Doc. 6 at 12.)

Prosecutorial misconduct, like vouching, violates a defendant's due process rights if it infects the trial with such unfairness that defendant's right to a fair trial is denied. *See Greer v. Miller*, 483 U.S. 756, 765 (1987). Generally, the test for misconduct involves two steps: (1) the court determines whether the prosecutor's statements were improper, and (2) if they were, the court determines the impact the statements had on the jury's verdict. *See United States v. Fleming*, 667 F.3d 1098, 1103 (10th Cir. 2011). However, because Petitioner did not object at trial based on prosecutorial misconduct, the court reviews "only for plain error and it is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.* (citing *United Stated v. Solon*, 596 F.3d 1206, 1212 (10th Cir. 2010)). Under this heightened standard, "reversal is warranted only when: (1) the prosecutor's statement is plainly improper and (2) the defendant demonstrates that the improper statement affected his or her substantial rights." *Fleming*, 667 F.3d at 1103. "To be plain, an error must be 'clear' or 'obvious,' meaning it is contrary to well-settled law." *United States v. Currie*, 911 F.3d 1047, 1057 (10th Cir. 2018) (citing *United States v. Taylor*, 514 F.3d 1092, 1100 (10th Cir. 2008)).

   1.   **Prosecutor's Alleged Vouching**

The testimonies of Dr. Venkata Katasani and Dr. Charles O'Donnell, both emergency room physicians, are illustrative of Petitioner's vouching claim. The prosecutor asked Dr. Katasani:

6

> Q: Was [B.C.J.'s] mother appropriately—well, acting appropriately during the visit in the emergency department when you were present?
> A: Yeah, that is right.
> Q: Was she appropriately concerned about the situation?
> A: Yeah, and she was okay with the treatment.

(R, Vol. XXXII at 460.)  The prosecutor then asked Dr. O'Donnell whether Harrington was "appropriate" during his contact with her; to which he responded:

> A: I believe she was and I was kind of looking for that, too.
> Q: Is that something you look for?
> A: Absolutely.
> Q: What were your observations of the mother?
> A: Seemed appropriately distraught. Seemed concerned.
> …
> Q: When you asked [Harrington] questions, did she ever appear to you to be evasive in answering those questions?
> A: No.

(R. Vol. XXXIV at 825-26, 829.)  On direct appeal, the Kansas Supreme Court declined to address the testimonial exchanges because Petitioner "failed to object to any of the testimony he now argues was improper." *Love*, 305 Kan. at 727.  In ruling on Petitioner's 60-1507 motion, the state district court determined that Petitioner's trial counsel was not constitutionally deficient. (*See* R. Vol. I at 62-63.)  In doing so, the district court found the testimonial exchanges did not constitute prosecutorial error, explaining:

> The movant contends in his motion that the trial court "would've likely ordered the prosecution to stop the illegal behavior" if such an objection had been made. The movant is mistaken.  The Court would not have sustained the objection if it had been made.  The questions about [Harrington's] demeanor in this case were relevant just as were the questions regarding movant leaving the scene when EMS arrived at the house in this case in which only the mother or movant could have caused B.C.J.'s death.  The prosecutor was not vouching for or otherwise commenting on the mother's credibility by her questions.  The questioning does not constitute prosecutorial error.

(*Id*. at 63.)  This rationale was affirmed by the Kansas Court of Appeals finding the testimony was proper and that "an objection to the substance of the testimony would have been unwarranted."

7

*Love*, 2019 WL 1575362, at *5. Specifically, Petitioner could not succeed on his claim "simply by complaining about the admission of otherwise admissible evidence." *Id*. This court agrees.

"Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990).

Here, the testimonial exchanges were not plainly improper; rather, they illustrated Harrington's demeanor during her interactions with various witnesses. At no point did the prosecutor's questions approach "guarantees concerning the veracity of the witnesses." *United States v. Jones*, 468 F.3d 704, 708 (10th Cir. 2006). The trial boiled down to either Petitioner or Harrington murdering B.C.J., which made their reactions and responses to B.C.J.'s condition relevant. Petitioner does not cite, and this court has not found, any case law suggesting the prosecutor's questions were improper. Indeed, the prosecutor's questions were less concerning than statements the Tenth Circuit has previously found were not plain error. *See United States v. May*, 52 F.3d 885, 887-89 (10th Cir. 1995) (finding no plain error when prosecutor blatantly suggested the defendant gave false testimony based on advice from his counsel).

Moreover, even assuming the exchanges constituted "plainly improper" vouching, Petitioner has not shown that any improper statement affected his substantial rights, that is, "affected the outcome of the district court proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (quotations omitted). Indeed, Petitioner makes no attempt at meeting his burden of persuasion under the second part of the plain error review. *See Fleming*, 667 F.3d at 1103. The state court's determination that the prosecutor's questioning was proper is

8

not objectively unreasonable under the AEDPA's standards. Accordingly, Petitioner's application for relief on this ground is denied.

### B.  Ineffective Assistance of Counsel Claims

A claim of ineffective assistance of counsel in violation of the Sixth Amendment requires Petitioner to show that 1) his counsel's performance fell below an objective standard of reasonableness; and 2) but for his counsel's unreasonable errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "These two prongs may be addressed in any order, and failure to satisfy either is dispositive." *Grant v. Royal*, 886 F.3d 874, 903 (10th Cir. 2018) (quoting *Hooks v. Workman*, 689 F.3d 1148, 1186 (10th Cir. 2012)).

In evaluating the performance of counsel, the Supreme Court provided the following:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.
>
> . . .
>
> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 689-90 (internal citations omitted).  Because the Kansas Court of Appeals decided the merits of Petitioner's ineffective counsel claims under the correct legal standard, this court only determines whether its application of federal law was objectively unreasonable.  *See Williams*, 529 U.S. at 409-11.

### 1. Failing to Assert Evidence of Civil Lawsuit

Petitioner contends that counsel was ineffective for "failing to properly assert that the evidence of the civil lawsuit the mother of the victim had filed was relevant to the bias and credibility of various witnesses for the state." (Doc. 1 at 9.)  In his 60-1507 appeal, Petitioner argued "[i]t was vital that Harrington, and Katasani, be questioned about any personal motivations underlying" their testimonies, because "a full and complete cross-examination of these two witnesses" would have changed the result of his case.  (Brief of Appellant at 11, No. 18-118823-A.)  Petitioner's argument does not rise to the level of ineffective assistance of counsel.

On review, the Kansas Court of Appeals rejected this claim:

> The medical malpractice petition itself is remarkably vague about what Harrington contends the emergency room doctor did wrong in treating B.C.J. But a plaintiff bringing a civil action need only provide notice—not detailed factual representations—in a petition. The details typically are developed through the discovery process. Here, the petition could be read to allege the emergency room doctor failed to recognize an injury to B.C.J.'s neck that without treatment deteriorated and became fatal—a theory that would be inconsistent with the mechanism of injury the medical experts described at [Petitioner's] trial. The petition also could be read to allege the emergency room doctor was negligent in failing to recognize physical signs that B.C.J. had been abused and in failing to take actions that would have prompted her removal from the home, thereby averting the fatal injury the State alleged [Petitioner] inflicted several days later. The civil petition, however, was not itself evidence of anything; it was merely an allegation.
>
> Here, [Petitioner] never explains with any specificity just what his trial lawyer should have done with the medical malpractice petition to challenge the testimony of Harrington or the emergency room doctor. Nor has he developed some other evidence derivative of the medical malpractice action, such as

> expert medical testimony, that would suggest some new or alternative cause of B.C.J.'s death. We fail to see how the filing of the malpractice action would, in and of itself, prompt either Harrington or the emergency room doctor to shape their testimony in a way to implicate [Petitioner] in a criminal homicide of B.C.J. Likewise, we don't see that the petition could be used to suggest Harrington believed the emergency room doctor (rather than [Petitioner]) proximately caused B.C.J.'s death. [Petitioner] offers no such explanation. Harrington, as a lay person, shouldn't be expected to explain the theory of liability underlying the civil action.
>
> In short, [Petitioner] has failed to show some substandard representation by his trial lawyer with respect to the medical malpractice action generally and the petition in particular. The net effect essentially leaves [Petitioner] arguing what is functionally the same issue he raised and lost in his direct appeal. The point is without merit in his 60-1507 motion.

*Love*, 2019 WL 1575362, at *4 (internal citations omitted). The court agrees and finds that the state court's conclusion on this issue was neither contrary to, nor an unreasonable application of, *Strickland*.

Accordingly, Petitioner's application for relief on this ground is denied.

### 2.     Failure to Object to Alleged Vouching

Petitioner next argues that trial counsel was ineffective for failing to object to the prosecutor's questions "that led state witnesses to vouch" for the credibility of Harrington. (Doc. 1 at 11.) The court has already determined the prosecutor's questioning did not constitute vouching. Moreover, Petitioner makes no attempt to explain how counsel's failure to object to the alleged vouching changed the course of his trial.

Indeed, the Kansas Court of Appeals noted the same issue below and explained:

> We again fail to see how Love can show impermissible prejudice here. If the prosecutor's description of the testimony in the opening statement was proper, as the Supreme Court found, then the testimony itself, which conformed to what had been described, similarly would be proper. So an objection to the substance of the testimony would have been unwarranted. A trial lawyer can't be faulted for failing to make what would be a specious objection. Moreover, Love cannot establish impermissible prejudice simply by complaining about the admission

> of otherwise admissible evidence. He does not claim the evidence, despite its admissibility, should have been excluded as unfairly prejudicial.

*Love*, 2019 WL 1575362, at *5. The court agrees.

Here, Petitioner cannot show prejudice from counsel's failure to object to admissible evidence. *See Hale v. Gibson*, 227 F.3d 1298, 1321-22 (10th Cir. 2000) (finding no prejudice when trial counsel fails to object to admissible evidence); *see also Savage v. Bryant*, 636 F. App'x 437, 440-41 (10th Cir. 2015) (same); *Haney v. Addison*, 275 F. App'x 802, 806 (10th Cir. 2008) (same). The state courts' resolution of this claim was not an unreasonable application of clearly established federal law. Accordingly, Petitioner's application for relief on this ground is denied.

### C. Evidentiary Hearing for Ineffective Counsel Claims

Finally, Petitioner argues that, in the alternative, "the court of appeals should have reversed this matter for an evidentiary hearing." (Doc. 1 at 12.) Petitioner contends the district court erred as an evidentiary hearing was warranted to answer factual questions pertaining to his ineffective assistance of counsel claims. However, this claim only challenges the procedures of the state post-conviction remedy—not the underlying judgment responsible for Petitioner's incarceration. *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998). Because of this, Petitioner fails to state a cognizable claim for federal relief. *Id.*; *see also Steele v. Young*, 11 F.3d 1518, 1521 (10th Cir. 1993) (noting a petitioner's challenge to state "post-conviction procedures on their face and as applied to him [fails] to state a federal constitutional claim cognizable in a federal habeas proceeding."). Accordingly, Petitioner's application for relief on this ground is denied.

**IV.   Conclusion**

Petitioner's application for habeas corpus (Doc. 1) is DENIED.

IT IS SO ORDERED this 12th day of August, 2021.

                                                           _s/ John W. Broomes_
                                                           JOHN W. BROOMES
                                                           UNITED STATES DISTRICT JUDGE